LARRY J. VIATOR, SR.                    *        CIVIL ACTION

versus                                  *        NO. 09-3322

DAUTERIVE CONTRACTORS, INC.             *        SECTION "F"
and WESTERN COMPANY OF AMERICA, INC.

ORDER AND REASONS

Before the Court are two motions: (1) Magnolia's motion to remand; and (2) Steamship Mutual's motion to dismiss pending arbitration. For the reasons that follow, the motion to remand is DENIED, and the motion to compel arbitration is GRANTED subject to the reasons below.

Background

This removed lawsuit has a tortured state court history. In the underlying personal injury action, Larry S. Viator, an employee of Dauterive Contractors, was injured while aboard the MAG II (a barge owned by Magnolia Quarterboats and chartered by Western Geophysical) in June 1997.

On May 13, 1998 Viator sued Dauterive and Western Geophysical. On November 5, 2002 Western Geophysical filed a third-party demand against Magnolia, asserting that Magnolia owed defense and indemnity for any damages for which Western Geophysical may be liable, as well as for costs, expenses, and attorneys' fees associated with the defense of any claims made by plaintiff.

Western Geophysical also asserted that Magnolia was responsible for Viator's damages, if any, because of its negligence or the unseaworthiness of Magnolia's vessel, the MAG II.

Viator settled his claims against Western Geophysical and, as a part of the settlement, Viator was assigned any rights Western Geophysical had as third-party plaintiff against Magnolia. On January 20, 2004 Viator filed a motion to substitute himself for Western Geophysical in the third-party demand against Magnolia. Magnolia, believing that Western Geophysical owed it indemnity and defense from the events giving rise to Viator's injuries, asked Western Geophysical to defend it against the suit brought by Viator. When Western Geophysical failed to respond to Magnolia's tender of defense, Magnolia filed a third-party demand (or, essentially, counterclaim) for defense and indemnity against Western Geophysical and its insurer on July 17, 2008. Service was made on Western Geophysical on July 21, 2008.

Magnolia amended its third-party demand to add a jury request on October 6, 2008. When Western Geophysical disclosed its insurance policy for the relevant time period, Magnolia learned the identity of Western Geophysical's insurer, Steamship Mutual; Magnolia then filed a second amended third-party demand on December 18, 2008, naming Steamship Mutual, and claimed additional assured as to the coverage (if any) provided by Steamship Mutual to Western

Geophysical for Viator's claim.[1]

Western Geophysical and Steamship Mutual answered Magnolia's demands in February 2009. Magnolia, Western Geophysical, and Steamship Mutual filed dispositive motions that were set for hearing on May 7, 2009 in the state trial court. But on April 20, 2009 Steamship Mutual removed the suit to this Court.

Steamship Mutual predicates removal on the arbitration clause contained in the insurance policy between Western Geophysical and Steamship Mutual,[2] and invokes this Court's jurisdiction pursuant

---

[1] Steamship Mutual is an internationally-recognized protection and indemnity (P&I) Association, or Club. The coverage it provides is set forth in the Certificate of Entry, which incorporates the Club's Rules of Entry. (For a P&I mutual, the Rules of Entry are the equivalent of an insurance policy issued by a stock underwriter.) The Rules of Entry of Steamship Mutual require the arbitration in London of any claim against Steamship Mutual by one claiming protection and indemnity coverage. Because Magnolia's claim is that it is insured by Steamship Mutual, Magnolia must comply, says Steamship Mutual, with the contractual terms of that putative coverage, including the arbitration requirement. Steamship Mutual suggests that Magnolia cannot claim to be insured pursuant to the Rules of Entry and at the same time deny that it is bound to follow the venue requirement of those same Rules.

The Certificate of Entry and Acceptance between Steamship Mutual and Western Geophysical provides that "[a]ll terms, clauses, conditions and warranties are in accordance with the Rules of The Steamship Mutual Underwriting Association (Bermuda) Limited." The Rules of Entry, which were in effect at the time of Viator's alleged injury, define and limit the terms of coverage of any insured, including Magnolia in its capacity as an alleged additional insured. Rule 26 requires the arbitration in London of any claim by an insured, or an alleged insured, against Steamship Mutual.

[2] Rule 36 of the Rules of Entry insurance policy between Steamship Mutual and Western Geophysical provides:

3

to the Convention on the Recognition and Enforcement of Arbitral Awards, 9 U.S.C. §§ 201-208. In its Notice of Removal, Steamship Mutual asserted that "Western consents to and joins in the removal of this action although its consent is not necessary for removal pursuant to the Convention."

Magnolia now moves to remand; Steamship Mutual opposes remand and seeks dismissal of the suit pending arbitration.

---

<div style="margin-left: 2em;">

(i)(a)    If any difference or dispute shall arise between a Member [Wester Geophysical] and the Club [Steamship Mutual] concerning the construction of these Rules or of the Rules applicable to any Class in the Club or of any Bye-Law passed thereunder, or the insurance afforded by the Club under these Rules, or any amount due from the Club to the Member, such difference or dispute shall in the first instance be referred to and adjudicated by the Directors.

(b)    If the Member does not accept the decision of the Directors the difference or dispute shall be referred to the arbitration of two arbitrators, one to be appointed by each of the parties, in London, and the submission to arbitration and all the proceedings therein shall be subject to the provisions of the English Arbitration Act....

...

(d)    These Rules and any Contract of Insurance between the Club and a Member shall be governed by and construed in accordance with English Law.

</div>

I.

Although the plaintiff challenges removal in this case, the removing defendants carry the burden of showing the propriety of this Court's removal jurisdiction. *See* Manguno v. Prudential Property and Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002)(the removing party bears the burden of showing both that federal jurisdiction exists and, if challenged, that the removal was procedurally proper); *see* *also* Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir.), cert. denied, 510 U.S. 868, 114 S. Ct. 192, 126 L.Ed.2d 150 (1993); Willy v. Coastal Corp., 855 F.2d 1160, 1164 (5th Cir. 1988).

In most removal contexts, any ambiguities are construed against removal, Butler v. Polk, 592 F.2d 1293, 1296 (5th Cir. 1979), as the general removal statute should be strictly construed in favor of remand. York v. Horizon Fed. Sav. and Loan Ass'n, 712 F. Supp. 85, 87 (E.D. La. 1989); *see* *also* Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941). However, when a party invokes the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the Convention) as its vehicle for removal, the Fifth Circuit broadly instructs, "[s]o generous is [the Convention's removal provision that] the general rule of construing removal statutes strictly against removal 'cannot apply...because in these instances, Congress created special removal rights to channel cases into federal court.'" Acosta v. Master Maint. & Constr. Inc., 452

F.3d 373, 377 (5th Cir. 2006)(quoting <u>McDermott Int'l, Inc. v.</u>
<u>Lloyds Underwriters of London</u>, 944 F.2d 1199, 1213 (5th Cir. 1991)).
Because Steamship Mutual's jurisdictional predicate is based on the
Convention, the Court examines its provisions to determine whether
its grant of jurisdiction extends to this case.

<div align="center">II.</div>

The Convention was negotiated pursuant to the Constitution's
treaty power. The United States is a party to the Convention,
which Congress implemented at 9 U.S.C. § 201, et seq.,[3] "mak[ing]

---

[3] Title 9 of the United States Code contains both the
Federal Arbitration Act and the U.S. implementing legislation for
the Convention. When the Convention governs the recognition and
enforcement of an arbitration agreement or award, the FAA applies
only "to the extent that [the FAA] is not in conflict with [the
Convention Act] or the Convention as ratified by the United
States." <u>See</u> 9 U.S.C. § 8; <u>Francisco v. STOLT ACHIEVEMENT MT</u>, 293
F.3d 270, 274 (5th Cir.), <u>cert.</u> <u>denied</u> 537 U.S. 1030, 123 S.Ct. 561,
154 L.Ed.2d 445 (2002). The Fifth Circuit, acknowledging that the
Convention incorporates the Federal Arbitration Act (codified at
Chapter 1 of Title 9), points out that the Convention is broader:

> Both the Arbitration Act and the Convention
> provide that if a dispute in a pending lawsuit
> is subject to arbitration, the district court
> "shall on application of one of the parties
> stay the trial of the action until such
> arbitration has been had." Both provide that
> the district court "shall make an order
> directing the parties to proceed to
> arbitration" when the site for arbitration is
> within the district. But § 206 of the
> enabling legislation for the Convention also
> authorizes district courts to order parties to
> proceed with a Convention arbitration even
> outside the United States.

<u>See</u> <u>Sedco, Inc. v. Petroleos Mexican Nat'l Oil Co.</u>, 767 F.2d 1140,
1146 (5th Cir. 1985).

the Convention the highest law of the land." See <u>Sedco, Inc. v.</u>
<u>Petroleos Mexican Nat'l Oil Co.</u>, 767 F.2d 1140, 1145 (5th Cir.
1985). The Fifth Circuit has observed that the purpose of
ratifying the Convention was "to secure for United States citizens
predictable enforcement by foreign governments of certain arbitral
contracts and awards made in this and other signatory nations."
<u>McDermott Int'l, Inc. v. Lloyds Underwriters of London</u>, 944 F.2d
1199, 1207 (5th Cir. 1991)(citation omitted). Title 9, U.S.C. § 202
crafts the coverage of the Convention:

> An arbitration agreement or arbitral award arising out of
> a legal relationship, whether contractual or not, which
> is considered as commercial, including a transaction,
> contract, or agreement described in section 2 of this
> title, falls under the Convention. An agreement or award
> arising out of such a relationship which is entirely
> between citizens of the United States shall be deemed not
> to fall under the Convention unless the relationship
> involves property located abroad, envisages performance
> or enforcement abroad, or has some other reasonable
> relation with one or more foreign states. For the
> purpose of this section a corporation is a citizen of the
> United States if it is incorporated or has its principal
> place of business in the United States.

Among the Convention's provisions are jurisdictional grants,
which confer on federal district courts original and removal
jurisdiction over cases related to arbitration agreements reached
by the Convention. Section 203 focuses original federal
jurisdiction:

> An action or proceeding falling under the Convention
> shall be deemed to arise under the laws and treaties of
> the United States. The district courts of the United
> States...shall have original jurisdiction over an action
> or proceeding, regardless of the amount in controversy.

7

Section 205, "one of the broadest removal provisions...in the statute books",[4] governs removals to federal court:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or defendants may, *at any time before the trial* thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.

9 U.S.C. § 205 (emphasis added).

### III.

To determine whether removal is proper under Section 205, the removing defendant must show that (1) the arbitration clause at issue "fall[] under the Convention" pursuant to Section 202; and (2) the state court litigation "relates to" the arbitration clause for the purposes of Section 205. Acosta, 452 F.3d at 376.

A. The Convention Covers the Arbitration Clause

"In determining whether the Convention requires compelling arbitration in a given case," the Fifth Circuit instructs, the Court "conduct[s] only a very limited inquiry." Freudensprung v. Offshore Technical Services, Inc., 379 F.3d 327, 339 (5th Cir.

---

[4] Acosta v. Master Maintenance and Construction Inc., 452 F.3d 373, 377 (5th Cir. 2006).

2004)(citing <u>Francisco v. STOLT ACHIEVEMENT MT</u>, 293 F.3d 270, 274 (5th Cir.), <u>cert.</u> <u>denied</u> 537 U.S. 1030, 123 S.Ct. 561, 154 L.Ed.2d 445 (2002)).  An agreement "falls under" the Convention pursuant to Section 202, and the Court should compel arbitration if these four prerequisites are met:

> (1)  there is a written agreement to arbitrate the matter;
> (2)  the agreement provides for arbitration in a Convention signatory nation;
> (3)  the agreement arises out of a commercial legal relationship; and
> (4)  a party to the agreement is not an American citizen.

<u>Id.</u> (citing <u>Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.</u>, 767 F.2d 1140, 1144-45 (5th Cir. 1985)(citation omitted)); 9 U.S.C. § 202.  "Once 'these requirements are met, the Convention requires the district court[] to order arbitration...unless it finds that the said agreement is null and void, inoperable or incapable of being performed.'" <u>Id.</u> (citing <u>Sedco</u>, 767 F.2d at 1146 (quoting Convention, Article II(3)).

These is no serious dispute that these elements are met.  First, there is an agreement in writing to arbitrate the coverage dispute.[5]  Second, the Rules of Entry provide for arbitration in

---

[5]  When evaluating this factor, the Fifth Circuit instructs the Court to consider whether the arbitration provision is broad or narrow: "it is difficult to imagine broader general language than 'any dispute.'" <u>Sedco</u>, 767 F.2d at 1145.  The arbitration clause in Rule 36 of the Rules of Entry uses the broad language of "any difference or dispute."

the territory of a Convention signatory -- London, England.  Third,
the agreement arises out of a commercial legal relationship -- a
contract of insurance between a mutual protection and indemnity
association and an insured.  See Roser v. Belle of New Orleans,
L.L.C., No. 03-1248, 2003 WL 22174282, at *4 (E.D.La. Sept. 12,
2003)(Engelhardt, J.)(determining that a protection and indemnity
insurance agreement satisfies the commercial legal requirement
under the Convention).  Finally, the fourth element is met because
the record establishes that Steamship Mutual is not a United States
citizen.

Having determined that the arbitration agreement falls under
the Convention, the Court must now turn to the language of Section
205 to determine whether the state court litigation relates to the
arbitration clause. If it does,this Court has removal jurisdiction.

B. The Litigation Relates To the Arbitration Clause

"The plain and expansive language [of Section 205]", the Fifth
Circuit has observed, "embodies Congress's desire to provide the
federal courts with broad jurisdiction over Convention Act cases in
order to ensure reciprocal treatment of arbitration agreements by
cosignatories of the Convention." Acosta v. Master Maintenance and
Construction Inc., 452 F.3d 373, 376 (5th Cir. 2006).[6]   The Fifth

_____

[6] Indeed, the Supreme Court has made clear:

The goal of the [C]onvention, and the
principal purpose underlying American adoption
and implementation of it, was to encourage the

10

Circuit has further observed that this unambiguous policy of favoring recognition of arbitration agreements that fall under the Convention is patently reflected in the Convention's incorporation of the Federal Arbitration Act (9 U.S.C. § 208) and its enforcement mechanism, empowering courts to compel arbitration pursuant to 9 U.S.C. § 206.[7]  Id. at 376-77.  To further promote uniformity, Congress guaranteed a federal forum for enforcement by granting the federal courts jurisdiction over Convention cases, and adding a generous removal provision at Section 205.  Id. at 377 (citing McDermott Int'l, Inc. v Lloyds Underwriters of London, 944 F.2d 1199, 1207-08 (5th Cir. 1991)("uniformity is best served by trying all [Convention] cases in federal court unless the parties unequivocally choose otherwise")).  The Court must determine

_____

                recognition and enforcement of commercial
                arbitration agreements and international
                contracts and to unify the standard by which
                the agreements to arbitrate are observed and
                arbitral awards are enforced in the signatory
                countries.

Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15, 94 S.Ct. 2449, 2457 n.15, 41 L.Ed.2d 270, 281 n.15 (1974)).

                [7] Section 206 provides:

                A court having jurisdiction under this chapter
                may direct that arbitration be held in
                accordance with the agreement at any place
                therein provided for, whether that place is
                within or without the United States.  Such
                court may also appoint arbitrators in
                accordance with the provisions of the
                agreement.

whether there is a nexus between the arbitration clause and the lawsuit -- whether the arbitration clause "relates to" the litigation.

The Fifth Circuit confronted the application of Section 205's "relates to" phrase in <u>Acosta</u>. The plaintiffs in <u>Acosta</u> sued Georgia Gulf Corporation and several of its contractors for negligence arising from the September 1996 release of mustard-gas agent at the GGC facility; pursuant to Louisiana's direct action statute, the plaintiffs also sued two foreign insurers, whose policies included arbitration clauses governing disputes over coverage. 452 F.3d at 375. Invoking the American Heritage Dictionary (4th ed. 2000) definition of "relate" (as meaning "to have connection, relation, or reference"), the Court of Appeals concluded that the subject matter of the litigation related to the arbitration clauses. <u>Id.</u> at 378-79 ("Common sense dictates the conclusion that policy provisions relating to coverage of the insured's torts are, almost by definition, related to claims that are based on the disputed assertion of coverage of the insured's torts").[8] Moreover, the arbitration clauses in the <u>Acosta</u> insurance policies declared the forum for resolution of coverage

_____

[8] The Fifth Circuit made clear that "[t]he operation of the direct-action statute as a matter of Louisiana state law does not alter the fact that the litigation is related to the arbitration clause as a matter of logic and federal removal law." <u>Id.</u> at 379 (noting "we cannot ignore Congress's decision that the federal courts are best able to establish uniformity in the enforcement of arbitral agreements").

disputes. Thus, the Court of Appeals articulated the rule that "a clause determining the forum for resolution of specific types of disputes relates to a lawsuit that seeks the resolution of such disputes." Id. at 379.

Applying Section 205, and the broad construction of "relates to" sanctioned by Acosta, compels the same end result: this litigation is related to the arbitration clause in Steamship Mutual and Western Geophysical's insurance contract. The insurance contract contains an arbitration clause that declares England as the forum for the resolution of coverage disputes; the arbitration clause is therefore related to the state court litigation, where Magnolia seeks the benefit of Steamship Mutual's disputed coverage for Western Geophysical's alleged protection and indemnity.

Because the arbitration agreement "falls under" the Convention (pursuant to Section 202) and the litigation "relates to" the agreement (pursuant to Section 205), Steamship Mutual has established that this Court has removal jurisdiction. Accordingly, this Court has jurisdiction, and may enforce the arbitration clause, unless (as Magnolia asserts) removal was procedurally defective.

C. Removal Was Procedurally Proper

1. Removal Was Timely Under Section 205.

Magnolia contends that removal was untimely. Even though Section 205 permits removal "at any time before trial", Magnolia

insists that the general removal procedure statute, 28 U.S.C. § 1446(b), applies to require "[t]he notice of removal of a civil action...shall be filed within thirty days" of service. As this Court has previously pointed out regarding this same issue, Magnolia "seems to ignore § 205." <u>Lejano v. K.S. Bandak</u>, No. 00-2990, 2000 WL 33416866, at *4 (E.D. La. 2000). Indeed, Magnolia's argument would convert simple, clear words to mere clichés.

This Court has long ago observed that the plain language of Section 205 commands that "defendants who removed under the Convention are not limited by the usual thirty day window in which to petition for removal." <u>Id.</u> Although, as Magnolia points out, <u>Lejano</u> was decided some years ago, the Court remains persuaded that Section 205 is unclouded and "leaves no room for interpretation."[9]

---

[9] Magnolia fails to cite any case law to the contrary. The Court notes that a section of the Middle District of Louisiana reached the same conclusion as this Court did almost nine years ago, and the Fifth Circuit affirmed (without addressing the timeliness issue). <u>See</u> <u>Acosta v. Master Maintenance & Construction</u>, 52 F. Supp. 2d 699, 705 (M.D.La. 1999), <u>aff'd</u>, 452 F.3d 373 (2006). In <u>Acosta</u>, the district court rejected the plaintiffs' interpretation of "at any time before trial" and determined that the phrase means that "removal may occur at any time before an adjudication on the merits.") Also, the Fifth Circuit has suggested that, if presented with the issue, it would apply the plain words of Section 205:

> Under section 1441(d) [of the Foreign Sovereign Immunity Act], a defendant may remove "at any time for cause shown" and under section 205 [of the Convention], a defendant may remove "at any time before the trial." Other cases may be removed only within 30 days after the defendant receives a pleading. <u>See</u> 28 U.S.C. § 1446(b).

14

<u>Id.</u>  Thus, Steamship Mutual's removal was timely under the Convention.

    2.  Western Geophysical Consented to Removal.

    Magnolia next contends that the case should be remanded because Western Geophysical failed to consent to removal, thereby violating the Fifth Circuit's rule of unanimity. In its Notice of Removal, Steamship Mutual asserted that "Western consents to and joins in the removal of this action although its consent is not necessary for removal pursuant to the Convention."  However, one month after Steamship Mutual filed its Notice of Removal on April 20, 2009, Western Geophysical (on May 19, 2009) filed a formal Consent to Removal, which "evidenc[ed] its consent to the removal of this action by Steamship Mutual."  The Court must determine whether Western Geophysical's consent to removal complied with the Convention's removal requirements.

    A defect in the procedure for removal, if timely asserted, may be grounds for remand to state court.  28 U.S.C. § 1447(c) (providing 30-day window for challenges to procedural defects in removal); <u>Caterpillar, Inc. v. Lewis</u>, 519 U.S. 61 (1996).  The Court first looks to the Convention's removal provision to see whether it speaks to this issue, as it directly spoke to the issue

---

<u>McDermott Int'l, Inc. v. Lloyds Underwriters of London</u>, 944 F.2d 1199, (5th Cir. 1991)(comparing the FSIA to the Convention and noting that "a restrictive construction of a district court's authority to remand certain types of cases fosters uniformity in that area of law").

of timeliness of removal. Section 205 states that "the defendant or the defendants may, at any time before the trial thereof, remove such action ..." Magnolia insists that this language ("the defendant or defendants...may remove such action...") should be given the same construction as the identical language found in 28 U.S.C. § 1441(a), the general removal statute.[10] The Court is not persuaded.

The case literature applicable to removals under Section 1446(b), in the case of multiple defendants, is well-settled in the Fifth Circuit: absent exceptional circumstances, all served defendants are required to join in the removal. Johnson v. Helmerich & Payne, Inc., 892 F.2d 422, 423 (5th Cir. 1990); Fontenot v. Global Marine, Inc., 703 F.2d 867, 870 n.3 (5th Cir. 1983). The 30-day time limit imposed by Section 1446, says the circuit court, begins to run as soon as the first defendant is served. Getty Oil Corp. v. Insurance Co. of North America, 841 F.2d 1254, 1261-62 (5th Cir. 1988) (holding that all served defendants are required to join in petition for removal no later than 30 days from the date on which the first defendant was served). Thus, the "first-served

_____

[10] Section 205 also states, regarding procedure generally, that "[t]he procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal." Magnolia urges that this provision bolsters their argument that the same construction given Section 1441 should be given Section 205. (Magnolia invoked this same portion of Section in an attempt to support their argument that removal was untimely.)

defendant" rule in this Circuit is inherently linked to the 30-day
time period for removal imposed by Section 1446(b).[11]

The Fifth Circuit narrowly avoided deciding whether Section
205 removals require the unanimous consent of defendants in Acosta.
452 F.3d at 379. Instead of affirming the district court's ruling
that the consent of all defendants to removal is not required by
the Convention, the Court of Appeals affirmed the district court's
(alternate) finding that unanimity was satisfied because the
allegedly non-consenting defendants were nominal parties, whose
consent was not required under the unanimity rule. Id.

Some courts outside the Fifth Circuit have determined that
Section 205 is subject to the unanimity rule.[12] If the general rule

_____

[11] Courts outside the Fifth Circuit generally reject the
first-served defendant rule in favor of a last-served (or "each
served") defendant rule. See, e.g., Bailey v. Janssen
Pharmaceutica, Inc., 536 F.3d 1202 (11th Cir. 2008)(noting that, and
following, the trend in recent case law favors the last-served
defendant rule); Marano Enters. of Kan. v. Z-Teca Rests., L.P., 254
F.3d 753, 755 (8th Cir. 2001)(endorsing last-served defendant rule);
Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 532
(6th Cir. 1999)(later-served defendants are entitled to 30-days to
remove, and pointing out that "[t]he statutory language [of Section
1446(b)] itself contemplates only one defendant and thus does not
answer the question of how to calculate the timing for removal in
the event that multiple defendants are served at different times,
one or more of them outside the original 30-day period") McKinney
v. Board of Trustees of Maryland Community College, 955 F.2d 924
(4th Cir. 1992)(each defendant has 30 days from the time they are
served with process to join a timely-filed notice of removal).

[12] See, e.g., Vistra Trust Co. v. Stoffel, No. 08-2844,
2008 WL 5454126 (S.D.N.Y. Dec. 29, 2008)(noting that federal courts
construe removal statutes narrowly and ultimately finding that "the
generally applicable rule of unanimity" applies to cases under the
Convention); NPI, Inc. v. Pagoda Ventures, Ltd., No. 08-346, 2008

17

of unanimity (that all defendants join in removal), with no time requirement, applies, Western Geophysical's consent filed into the record satisfies the rule.[13]  This Court, however, is also persuaded by the Acosta district court's suggestion that consent by all defendants to removal is not required by the Convention.[14]

The Fifth Circuit acknowledged in McDermott, in comparing the

---

WL 3387467 (N.D. Okla. Aug. 8, 2008)("The weight of authority holds that 9 U.S.C. § 205 is subject to the unanimity rule"); Marine Solutions Services, Inc. v. Ribelin Lowell & Co. Ins. Brokers of Alaska, Inc., No. 05-134, 2005 WL 1880618 (D. Alaska July 27, 2005) (remanding based on procedural defect due to lack of unanimity and noting that, in Section 205, "Congress provided only one exception to the application of general removal law. This court cannot create another one").  These courts seem to merely require that all defendants join in removal; the courts do not appear to address whether the consent that is required from co-defendants must be manifested within a certain time period, which could be problematic, in light of Section 205's mandate that defendants may remove at any time before trial.

[13] The Fifth Circuit's gloss on the removal procedure of 28 U.S.C. §§ 1441(a) and 1446(b) -- in articulating a first-served rule in multiple defendant cases -- relies entirely on the 30-day time limit for removal, which Congress rejected in implementing Section 205.  9 U.S.C. § 205 (permitting removal "at any time before trial").  It would make little sense to incorporate the 30-day time limit of Section 1446 into the Convention's removal procedure for the purpose of enforcing "timely" unanimity among defendants.  Moreover, unlike general removal provisions, which the Court ordinarily strictly construes in favor of remand, the public policy favoring uniformity in enforcement of arbitration agreements pursuant to the Convention calls for the Convention's removal provisions be construed in favor of federal jurisdiction.  Acosta v. Master Maintenance and Construction, Inc., 452 F.3d 373, 377 (5th Cir. 2006)(citation omitted).

[14] Acosta, 52 F. Supp. 2d at 709 ("this court concludes that the jurisprudence under 28 U.S.C. § 1441(a) as to the meaning of 'the defendant or defendants' has no application to that phrase as used in 9 U.S.C. § 205").

Foreign Services Immunities Act and the Convention, that "Congress deliberately sought to channel cases ... away from the state courts and into federal courts ... for the purpose of assuring a unitary federal jurisprudence." 944 F.2d at 1213. As the <u>Acosta</u> district court pointed out, "[t]hat purpose is best served by construing Section 205 in a fashion that allows a foreign insurer to remove a case arising under the Convention Act without the consent of any other party defendant." <u>Acosta</u>, 52 F. Supp. 2d at 708. Finally, the <u>Acosta</u> district court also persuasively noted that "[t]o condition the foreign insurer's access to the uniform body of federal law upon the whim of unknown and unknowable future party defendants is to completely thwart the very purposes of the Convention Act."[15] <u>Id.</u>

---

[15] Indeed, this Court finds that, to import the unanimity rule into Section 205 would severely undermine the enforcement of foreign arbitrations in violation of arbitration agreements and the Convention. Consider if Western Geophysical in this matter had refused to consent to removal of the case by Steamship Mutual. That would permit a signatory to the arbitration clause to avoid arbitration in clear violation of the Convention.

Moreover, to require the consent of Western Geophysical (a signatory to the arbitration agreement) could lead to an awkward and inefficient consequence: If this Court required Western Geophysical's consent to removal, but found it absent from the record in light of the Fifth Circuit's gloss on the general removal law, remand would be required. But, once the case was remanded, Western Geophysical (or even Steamship Mutual) could simply remove the suit again "at any time before trial" consistent with Section 205.

Furthermore, as the <u>Acosta</u> district court noted, to the extent the purpose of the Convention Act is to encourage foreign trade by assuring foreign businesses that they will have access to a uniform body of law if their contracts contain arbitration clauses, to condition a foreign insurer's access to that uniform

Magnolia seems to argue that the removal was procedurally defective because Western Geophysical never formally consented to the removal.[16] But Western did file formal consent to removal on May 19, 2009.[17]

Accordingly, IT IS ORDERED: that, because removal complied with Section 205, Magnolia's motion to remand is DENIED. Because the arbitration clause falls under the Convention, and the litigation relates to the arbitration clause, arbitration is required by the Convention.[18] IT IS FURTHER ORDERED: that Steamship

_____

body of law on the unanimous consent of all defendants would thwart the Convention's purpose. Id. at 708-09.

[16] Getty Oil specifically instructs that an "unsupported statement in the original removal petition ... indicat[ing] that [a co-defendant] actually consented to removal when the original petition was filed" is insufficient to provide formal notice of consent. 841 F.2d at 1262.

[17] Given Western Geophysical's unequivocal consent, Magnolia would presumably resort to a rendition of its untimeliness-as-procedural-defect argument, which the Court has rejected for all the reasons noted.

[18] The Court finds Magnolia's attempts to brand with every infirmity Steamship Mutual's motion to dismiss pending arbitration is ineffective: As noted, all that is required to compel arbitration is that an arbitration agreement fall under the Convention. The Court rejects Magnolia's suggestion that there is no reasonable connection in this matter to any foreign jurisdiction. Finally, the Court rejects Magnolia's argument that Louisiana statutory law reverse-preempts the Convention by application of the McCarran-Furguson Act. A panel of the Fifth Circuit has held that the Convention is a treaty, and therefore not an Act of Congress within the meaning of the McCarran-Furguson Act. Accordingly, the panel rejected an assertion that the McCarran-Ferguson Act caused a Louisiana statute -- one that had been interpreted as prohibiting arbitration agreements in insurance contracts -- to reverse-preempt the Convention under the

Mutual's motion to compel arbitration is GRANTED: pursuant to Section 206, arbitration must be held in accordance with the arbitration clause. IT IS FURTHER ORDERED: that this action is stayed and closed pending arbitration, rather than dismissed.

New Orleans, Louisiana, June 26, 2009.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

circumstances presented by that case. See Safety Nat'l Casualty Corp. v. Certain Underwriters at Lloyd's London, 543 F.3d 744 (5th Cir. 2008); rehearing *en banc* has been granted.